[Cite as *In re C.G.-S.*, 2019-Ohio-370.]

STATE OF OHIO         )           IN THE COURT OF APPEALS
                       )ss:      NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

IN RE: C.G.-S.                    C.A. No.     29129

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 18-02-0116

DECISION AND JOURNAL ENTRY

Dated: February 6, 2019

CALLAHAN, Presiding Judge.

{¶1} Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated his child C.G.-S. an abused and dependent child. This Court affirms.

I.

{¶2} Father is the biological father of C.G.-S. (d.o.b. 10/30/04). Mother is deceased. The parents were never married, and the child had always been in the legal custody of Mother. After Mother's death, the child was placed in the legal custody of her maternal grandmother until that caregiver passed away. At that time, Father obtained legal custody of the then five or six-year old child and terminated her relationship with her maternal relatives for a few years. Father is married. While in Father's custody, the child resided with Father, her stepmother, five half-brothers, and two stepsisters. Near the end of 2015, C.G.-S. was permitted to reestablish a relationship with her maternal relatives.

{¶3} Sometime in 2016, when the child was around 12 years old, C.G.-S. disclosed to one of her stepsisters that she awoke to find her oldest half-brother ("Junior") on top of her in bed. She reported that her private area hurt after Junior got off of her. The stepsister told the stepmother who told Father. In July 2017, C.G.-S. texted one of her maternal aunts ("Aunt") and disclosed multiple incidents of what Junior had done to her. The child also disclosed incidents of physical discipline by both Father and her stepmother.

{¶4} Based on the child's disclosures, Aunt filed a complaint for legal custody of the child in the juvenile court in July 2017. Five days later, Summit County Children Services Board ("CSB" or "the agency") filed a complaint alleging C.G.-S. to be an abused and dependent child. Two months later, however, the agency moved to withdraw its complaint. The juvenile court granted the motion and dismissed CSB's complaint. Approximately six weeks later, Aunt filed a complaint alleging that the child was an abused and dependent child. That complaint was dismissed, however, based on the inability to prosecute it within 90 days. On February 5, 2018, Aunt refiled a complaint alleging that C.G.-S. was an abused and dependent child. She alleged abuse pursuant to R.C. 2151.031(A) (sexual abuse), abuse pursuant to R.C. 2151.031(B) (endangerment), and dependency pursuant to R.C. 2151.04(C) (conditions or environment warranting the state in assuming guardianship of the child). Aunt received an emergency order of temporary custody of the child the same day. The juvenile court appointed an attorney-guardian ad litem for C.G.-S.

{¶5} At the shelter care hearing, Father testified that another of his daughters had previously alleged that Junior molested her. Although Father reported those allegations to the police, Junior was not charged. After the shelter care hearing, the magistrate found that it was in the best interest of C.G.-S. to remain in the emergency temporary custody of Aunt. The

magistrate ordered some Friday and Saturday visitation for Father, issued a no contact order against Junior, and added CSB as a party to the case. The agency shortly thereafter sought removal as a party, but the juvenile court denied that motion. Later, at the request of the attorney-guardian ad litem, the juvenile court appointed her as the child's attorney and appointed a separate guardian ad litem to represent the best interests of the child.

{¶6} At the adjudicatory hearing, Aunt presented only the child's testimony. Father presented only his own testimony in his case-in-chief. CSB did not present any evidence, and the assistant prosecutor asserted that the agency would remain neutral as to adjudication. The magistrate issued a decision ordering that (1) C.G.-S. was an abused child pursuant to R.C. 2151.031, without identifying any relevant subsections; (2) C.G.-S. was a dependent child as alleged in the complaint; and (3) the child would remain in the emergency temporary custody of Aunt under an order of protective supervision by CSB. Father filed timely objections to the magistrate's decision.

{¶7} At the dispositional hearing, Father and Aunt waived their rights to a hearing and agreed that the child would be placed in the temporary custody of Aunt with an order of protective supervision by CSB. The magistrate extended the order of visitation as previously ordered, and denied the agency's motion to terminate protective supervision. The juvenile court adopted the magistrate's decision the same day.

{¶8} Father supplemented his objections to the adjudicatory decision after the transcript was filed. He argued that the evidence did not support the adjudications of abuse and dependency. Aunt did not file a brief in opposition. The juvenile court sustained Father's objections as they related to the allegation of sexual abuse pursuant to R.C. 2151.031(A). It overruled Father's objections, however, regarding abuse by endangerment pursuant to R.C.

2151.031(B), and dependency. Father filed a timely appeal. He raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE FINDINGS OF ABUSE AND DEPENDENCY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶9} Father argues that the juvenile court's findings that C.G.-S. is an abused and dependent child are against the manifest weight of the evidence. This Court disagrees.

{¶10} Juvenile abuse, neglect, and dependency cases are initiated by the filing of a complaint by any person with the requisite knowledge. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(F). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If allegations in the complaint are not proved by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F)(1); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶11} This Court reviews as follows:

In determining whether the juvenile court's adjudication of dependency is against the manifest weight of the evidence, this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Modifications in the original and internal quotations omitted.) *In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 8, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 8 (9th Dist.).

{¶12} Father challenges the findings that C.G.-S. is abused pursuant to R.C. 2151.031(B), and dependent pursuant to R.C. 2151.04(C).

Abuse

{¶13} R.C. 2151.031(B) defines an "'abused child'" as one who is "endangered as defined in [R.C.] 2919.22, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child[.]" While the statute provides multiple means of endangering a child, the juvenile court applied the following provision: "No person, who is the parent * * * of a child * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A).

{¶14} C.G.-S. disclosed to her stepsister that she awoke to find their brother Junior on top of her and that her private area hurt after he got off her. Father admitted that his wife told him about the incident after she learned of it. Father further admitted that one of his stepdaughters had also alleged on a prior occasion that Junior had touched her inappropriately. C.G.-S. testified that, although Father yelled at all the boys in the house and took away their electronics, she was not aware that Father did anything more to address her situation or her sister's. Father did not take C.G.-S. for medical care or counseling in response to her allegations. Father admitted that he let his stepdaughter's mother handle the situation involving that child.

{¶15} Although Father eventually spoke with the police regarding C.G.-S.' claims, he expressed doubt regarding them. In fact, he hoped that the police would question his daughter and determine that her story did not remain consistent. Although Father advised the child to lock

her bedroom door at night, he did not remove Junior from the home until several months later after Father and Junior had a verbal fight about something unrelated to the alleged inappropriate touching. After a CSB caseworker came to the home to speak with Father about the alleged incident, Father was angry with the child and told her that it was "nobody's business what goes on in this house." When a police officer came to speak with the child in Father's home, Father prevented the child from telling the officer everything that happened.

{¶16} C.G.-S. testified that she remained fearful that Junior would continue to engage in inappropriate touching of her. Even though he eventually left the home, and there was a no contact order prohibiting him from seeing her, the child asserted that Junior was in Father's home more than once when she was visiting Father.

{¶17} Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in adjudicating C.G.-S. an abused child. The clear and convincing evidence supports the finding that Father created a substantial risk to the health and safety of the child by failing to seek medical and mental health care for the child after she alleged that Junior had molested her. Moreover, the evidence supports the finding that Father violated his duty to the child by failing to protect her from her alleged assailant. Accordingly, the adjudication of C.G.-S. as an abused child is not against the manifest weight of the evidence.

Dependency

{¶18} R.C. 2151.04(C) defines "'dependent child'" as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"

{¶19} In addition to the incident where C.G.-S. awoke to find Junior on top of her, the child testified that on multiple other occasions she would awake smelling like her brother or to find a white substance with a distinctive smell on her shirt. After she disclosed the incidents to her Father, she was scolded by her paternal grandmother not to talk to anyone about the situation, or she might end up in a foster home. The child testified that she felt like no one in Father's family believed her. In the meantime, she continued to feel unsafe in Father's home. C.G.-S. expressed discomfort being in Father's home even with Junior out of the house. For example, she described an incident where her stepmother choked her and stuck her fingernails in the child's neck because the child had not picked up items belonging to her stepmother from the floor. C.G.-S. described additional incidents where Father smacked her in the face for making comments he did not like, getting dirt on something, and failing to bring in groceries from the car.

{¶20} The child described Father's home as clean, spacious, and an environment in which her basic needs were met. Nevertheless, the clear and convincing evidence demonstrates that C.G.-S. feels unsafe in Father's home due to the nature of the physical discipline utilized by Father and her stepmother, as well as the fact that her allegations of repeated inappropriate touching by Junior were disregarded. In fact, Father routinely disregarded the no contact order between Junior and C.G.-S., and allowed his son to be present in the home during the child's visits. Moreover, family members sternly cautioned the child not to disclose the abuse she sustained, giving rise to an environment of secrecy to protect the family's reputation rather than an environment of security in which the child could feel safe. Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest

miscarriage of justice in adjudicating C.G.-S. a dependent child. For the foregoing reasons, Father's sole assignment of error is overruled.

### III.

{¶21} Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


LYNNE S. CALLAHAN
FOR THE COURT

CARR, J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

EMILY M. HETE, Attorney at Law, for Appellee.