[Cite as *State v. Simmons*, 2020-Ohio-614.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

COREY B. SIMMONS

    Appellant

C.A. No.     18CA011262

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    17 CR 095908

DECISION AND JOURNAL ENTRY

Dated: February 24, 2020

---

SCHAFER, Judge.

{¶1} Appellant-Defendant, Corey Simmons appeals his convictions in the Lorain County Court of Common Pleas. We affirm.

I.

{¶2} On February 26, 2017, another man instigated a physical altercation with Simmons at the home of C.S., causing damage to personal property. C.S. told the men to leave because they were tearing up her home and kids were present. After the men left, C.S. locked the front door, took the kids upstairs, and called the police. C.S. heard two gun shots while she was upstairs.

{¶3} In the meantime, a man who lived down the street ("Neighbor") went outside his home to have a cigarette. After hearing a gun shot, Neighbor walked to the end of his driveway and observed a man pointing a firearm at another man. Neighbor then observed the man with the

firearm fire a shot at the other man. Neighbor retreated to his home and called police. Neighbor identified the shooter as Simmons.

{¶4} Officer Harris and Sergeant Groomes of the Elyria Police Department responded to the location for a report of an argument between two males, one of whom had a gun. When they arrived on scene, Officer Harris located a male, later identified as Simmons, standing nearby and matching the description of the shooter. Officer Harris detained Simmons because the report indicated he had a firearm. Officer Harris "patted him down for weapons[,]" but did not locate a weapon. While Officer Harris was engaged with Simmons, Sergeant Groomes spoke with Neighbor and obtained a written statement. A search of the area, including the interior of C.S.'s home, did not produce a firearm.

{¶5} The Lorain County Grand Jury subsequently filed an indictment against Simmons which charged him with felonious assault, tampering with evidence, and discharge of a firearm on or near prohibited premises which created a substantial risk of physical harm to any person or cause serious physical harm to property. All three counts included attendant firearm specifications. Simmons entered a plea of not guilty at arraignment and the matter proceeded through the pretrial process.

{¶6} On the morning trial was scheduled to commence, Simmons addressed the trial court and requested the opportunity to inquire if he could hire his own attorney. The trial court denied his request and the matter proceeded to trial. At trial, the State called three witnesses to testify: Neighbor, Officer Harris, and Sergeant Groomes, and the defense called two witnesses to testify: C.S. and Simmons. Following deliberation, a jury returned a verdict finding Simmons not guilty of felonious assault. The jury also returned verdicts finding Simmons guilty of tampering with evidence, discharge of a firearm on or near prohibited premises, and the firearm

specifications attendant to those charges. The trial court accepted the jury's verdicts and imposed sentence.

{¶7}   Simmons filed this timely appeal, raising two assignments of error for our review.

II.

### Assignment of Error I

**The verdicts for assault and obstruction of official business were not supported by sufficient evidence and were against the manifest weight of the evidence.**

{¶8}   Although Simmons' stated assignment of error challenges "verdicts for assault and obstruction of official business," the body of this assignment of error attempts to argue that Simmons' conviction for discharging a firearm, and the attendant firearm specification was not supported by sufficient evidence and is against the manifest weight of the evidence. Simmons does not appear to challenge his tampering with evidence conviction. Although Simmons states that his conviction is not supported by sufficient evidence and cites to the appropriate standard of review, his supporting argument focuses almost entirely upon the credibility of Neighbor, the only eye-witness, and the alleged inconsistency in his testimony. "Issues of credibility sound in weight, not sufficiency." *State v. Robinson*, 9th Dist. Wayne No. 18AP0045, 2019-Ohio-3613, ¶ 7. "Because [Simmons] has not otherwise developed an argument regarding the sufficiency of the evidence, this Court will address his manifest-weight argument only." *Id.* citing App.R. 16(A)(7); *In re E.G.*, 9th Dist. Medina No. 16CA0075-M, 2017-Ohio-2584, ¶ 27.

{¶9}   To determine whether a criminal conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice

that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting Black's Law Dictionary (6th Ed.1990). Nonetheless, "[a]n appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases." *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340. "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

{¶10} This matter implicates Simmons' conviction for discharge of a firearm on or near prohibited premises, along with the attendant firearm specifications. R.C. 2923.162(A)(3) prohibits a person from discharging "a firearm upon or over a public road or highway." On appeal, Simmons does not challenge any specific element of the charge, and instead challenges the general credibility of Neighbor's testimony. "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. "'[T]he jury is free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Moreover, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chooses to believe the State's witnesses rather

than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

{¶11} Neighbor testified that prior to the incident, he was familiar with Simmons. He stated that on February 26, 2017, he had gone outside to have a cigarette in the driveway when he heard what sounded like a loud firecracker. He then walked to the end of his driveway and looked down the street, where he observed "an African-American male walking out into the street with a gun. He pointed the gun at a person walking away from him and fired a shot." When asked if the shooter shot in the air or at the ground rather than at the person, Neighbor said no, he "specifically recall[ed]" that the shooter "pointed the gun at the person running away." Neighbor stated that he was about five houses away from where the shots were fired.

{¶12} In his merit brief, Simmons first challenges Neighbor's credibility by stating that Neighbor testified he told his wife he had seen Simmons firing a gun at someone and later testified that he was not sure who the shooter was when he called police. However, our reading of Neighbor's testimony indicates that Neighbor believed the shooter was Simmons and that belief was later confirmed. Neighbor testified that after he witnessed the above, he immediately went into his house and told his wife, "I think I just saw Corey [Simmons] shoot a gun at somebody running up the street." Neighbor called 9-1-1, and described the shooter to police, but could only recall that the shooter was wearing sweatpants, a heavy coat, and a snowcap. Neighbor stated that he and his wife watched the shooter walking up the street toward another neighbor's house while waiting for police to arrive.

{¶13} Neighbor testified that when the police arrived, they confronted the shooter, and placed him under arrest. Neighbor stated that as soon as the shooter was arrested, "[h]e turned around before he got into the car, and that's when I realized it was, 100 percent, Corey

[Simmons]." Neighbor acknowledged that until that point, he was not positive the shooter was Simmons. However, he attested that knew the person the police were talking to was the same person he saw fire the shot.

{¶14} Simmons contends that Neighbor's testimony was inconsistent as to his identification of the shooter. However, Simmons has not identified any inconsistency in Neighbor's testimony. Neighbor never expressed doubt as to who the shooter was, and explained that he was certain as to who he saw shoot the firearm. Being familiar with Simmons, Neighbor believed him to be the shooter at the time he witnessed the incident, and his belief was later confirmed when police arrested the shooter. The jury could have evaluated this testimony and accepted that Neighbor was certain he saw a particular individual fire a shot at another person and believed he accurately identified that individual as Simmons.

{¶15} Simmons also challenges Neighbor's credibility by stating that Neighbor testified that it took twelve minutes for police to respond to his 9-1-1 call, but that every other witness who was asked about response time, stated police responded within approximately two minutes. A review of the transcript does shows that when asked about response time, Neighbor stated, "[t]welve minutes, maybe. It wasn't that long[,]" while both officers who testified stated it was less than two minutes. Neighbor further testified that while they waited for police to arrive, he and his wife watched the shooter walking up the street. Simmons does not explain the relevance of the contradictory testimony. Regardless, upon review, we conclude that Neighbor's statement was merely an estimation of time and the trier of fact was in the best position to evaluate this testimony and decide what weight to attribute to it.

{¶16} Simmons next challenges Neighbor's credibility by asserting that Neighbor "testified inconsistently about his criminal record[.]" During cross-examination, Simmons' trial

counsel inquired whether Neighbor had an aggravated assault with a weapon conviction from Florida. Neighbor responded that the matter had been dismissed and that there was no conviction. Although Simmons states that Neighbor testified "inconsistently" he actually argues that Neighbor's testimony was false. Simmons' contention appears to be based on a discussion held on the record, but outside the presence of the jury, related to a motion filed by Simmons' trial counsel requesting the trial court to order the State to correct the allegedly false testimony. After Simmons and the State presented their arguments, the trial court denied the motion. Nonetheless, Simmons has not argued on appeal that the trial court erred in denying his motion and has not pointed to any evidence in the record contradicting Neighbor's testimony that the charge had been dismissed.

{¶17} Finally, Simmons attempts to argue that his conviction for improperly discharging a firearm was against the manifest weight of the evidence because it is inconsistent with the jury's not guilty verdict on the felonious assault charge. In doing so, he speculates that the jury found him not guilty of felonious assault because it found that he acted in self-defense. However, "[Simmons] has not separately argued that the trial court erred by accepting inconsistent jury verdicts, so our consideration of this argument is limited to whether it bears on the weight of the evidence. It does not." *State v. Phillips*, 9th Dist. Summit No. 27552, 2017-Ohio-1186, ¶ 20.

{¶18} Based on the foregoing, we conclude that Simmons has not shown that the jury clearly lost its way and created a manifest miscarriage of justice. Simmons' first assignment of error is overruled.

<u>**Assignment of Error II**</u>

**The trial court erred when it denied [Simmons]' request for the appointment of new counsel prior to the commencement of the jury trial.**

{¶19}  In his second assignment of error, Simmons argues that the trial court erred when it denied his request to appoint new counsel prior to trial.  We disagree.

{¶20}  On the morning Simmons' trial was scheduled to begin, Simmons requested the opportunity to hire new counsel.  Simmons stated:

> I just want to ask to see if I'm able to hire a new attorney for the fact that I feel like, until this point, I wasn't represented properly.  I wasn't – we didn't go over the case until Thursday so – or, like, the details of the case.  I came in several times.  And I have my cards and dates here of the dates I came. (Indicating.)  We never went of the case until Thursday.  So I would like to try to see if I can hire my personal attorney and get more into the details of the case.

The trial court thereafter addressed Simmons' appointed counsel and inquired as to Simmons' claim of a lack of communication.  Simmons' trial counsel recounted multiple conversations she had with Simmons following the exchange of discovery, and stated she felt they "had discussed everything that was necessary at the time," and that she was "well prepared to go forward" with the trial.  Following this exchange, the trial court denied Simmons' request.

{¶21}  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to assistance of counsel for his defense.  *Accord* Ohio Constitution, Article I, Section 10.  "'[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate * * * rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'"  *State v. Jones*, 91 Ohio St.3d 335, 342 (2001), quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988).  Nonetheless, the Supreme Court of Ohio has recognized that "'[a]n indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'"  *State v. Cowans*, 87 Ohio St.3d 68, 72 (1999), quoting  *United States v. Iles*, 906 F.2d 1122, 1130 (6th

Cir.1990). A trial judge may deny a request for substitution of counsel if the defendant's request is unreasonable. *State v. Deal*, 17 Ohio St.2d 17 (1969), syllabus. "In evaluating a request for substitute counsel, the court must balance 'the accused's right to counsel of his choice [against] the public's interest in the prompt and efficient administration of justice.'" *State v. Clemons*, 6th Dist. Lucas No. L-01-1445, 2002-Ohio-5906, ¶ 10, quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996).

{¶22} "Decisions relating to the substitution of counsel are within the sound discretion of the trial court." *State v. Jones*, 91 Ohio St.3d 335, 343 (2001). An abuse of discretion implies the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include 'the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" *Jones* at 243, quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996). Additionally, this Court has previously recognized that a "'"motion to substitute counsel made on the day of trial, when such date was set in excess of two months prior to the date of trial, intimates such motion is made in bad faith for the purposes of delay * * * . The trial court [acts] within the bounds of its discretion in denying [such a] motion to substitute.'" *State v. Graves*, 9th Dist. Lorain No. 98CA007029, 1999 WL 1215161 (Dec. 15, 1999), quoting *State v. Haberek*, 47 Ohio App.3d 35, 41 (8th Dist.1988).

{¶23} In light of the statements of Simmons' trial counsel and the timing of Simmons' request, we cannot say that the trial court abused its discretion in this case. A review of the record shows that Simmons' trial was scheduled nearly six months in advance. Although

Simmons and his trial counsel did not have regular conversations leading up to trial, she stated that they had reviewed and discussed the discovery received from the State, that she had notes from their conversations, and that she had a hand drawn diagram of the interior of the house which Simmons had drawn. She also stated that she believed they had discussed everything "necessary," and that she was "well prepared" for trial.

{¶24} Simmons' second assignment of error is overruled.

## III.

{¶25} Simmons' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

PATRICK M. HAKOS, JR., Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.