[Cite as *State v. Betts*, 2020-Ohio-4800.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

JANET M. BETTS

    and

DAVID W. ADKINS

    Appellants

C.A. Nos.     29575
                     29576
                     29577

APPEAL FROM JUDGMENT
ENTERED IN THE
BARBERTON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE Nos.    CRB 1900829
                    CRB 1901035
                    CRB 1901287

DECISION AND JOURNAL ENTRY

Dated: October 7, 2020

SCHAFER, Judge.

{¶1} Defendants-Appellants, Janet Betts and David Adkins, appeal from their convictions in the Barberton Municipal Court. This Court affirms.

I.

{¶2} Betts and Adkins never married, but cohabited for many years and raised several children together. Betts' eldest child, S.C., went to high school one morning and told a counselor that Adkins had touched her inappropriately while washing her hair in the shower. A detective came to her school and interviewed her before speaking with her mother, her sisters, and Adkins. S.C. ultimately spent the night in foster care and returned home the next day. Meanwhile, Adkins

was charged with one count of sexual imposition and ordered, by way of a criminal protection order, not to have any contact with S.C.

{¶3} In the weeks that followed, the detective who interviewed S.C. met with her twice more at her high school. S.C. appeared distraught during those interviews and initially attempted to recant. She later informed the detective that her mother had been pressuring her to retract her statements and threatening her regarding the privileges she would lose and the hardships her family would face if Adkins could not provide for them. As a result of Betts' actions, she was charged with one count of child endangering and one count of obstructing justice. A criminal protection order was then issued against her, and S.C. was placed in foster care.

{¶4} The detective met with S.C. again after she was removed from her home. At that point, he learned that Adkins had ignored the protection order the court had issued against him and had returned to S.C.'s home almost immediately after its issuance. The detective also learned that Betts and Adkins had taken S.C. and her sisters on a weekend excursion and had stayed at a hotel so that Adkins could attend a bowling tournament. Once the foregoing information came to light, Adkins also was charged with violating a protection order.

{¶5} Betts' and Adkins' cases were consolidated for purposes of trial, and a jury found them guilty on all counts. The trial court sentenced them in their respective cases, and both appealed their convictions. This Court then consolidated their appeals for purposes of its decision.

{¶6} On appeal, Betts raises three assignments of error for review, and Adkins raises four assignments of error. To facilitate our analysis, we combine their related assignments of error.

II.

**Betts' Assignment of Error I**

**The trial court erred as a matter of law because the State failed to establish on the record sufficient evidence to support the charges levied against Ms. Betts**

**in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.**

### Adkins' Assignment of Error I

**The trial court erred as a matter of law because the State failed to establish on the record sufficient evidence to support the charges levied against [Mr. Adkins] in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.**

{¶7} In their first assignments of error, Betts and Adkins argue that the trial court erred when it denied their motions for acquittal because their convictions for sexual imposition (Adkins), child endangering (Betts), and obstructing justice (Betts) are based on insufficient evidence. We do not agree.

{¶8} This Court reviews the denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

Sexual Imposition

{¶9} A person commits the offense of sexual imposition if he has sexual contact with another, not his spouse, and either "knows that the sexual contact is offensive to the other person * * * or is reckless in that regard." R.C. 2907.06(A)(1). A person may not be convicted of sexual

imposition "solely upon the victim's testimony unsupported by other evidence." R.C. 2907.06(B). Even so, "[t]he corroboration requirement is not a 'question of proof' for the jury, but 'a threshold inquiry of legal sufficiency to be determined by the trial judge.'" *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 26, quoting *State v. Economo*, 76 Ohio St.3d 56, 60 (1996). "The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." *Id.* For example, a defendant's own statements, his access to the victim, and the victim's reasonably prompt reporting of the assault all may serve as corroborative evidence. *See State v. Roy*, 9th Dist. Lorain No. 13CA010404, 2014-Ohio-5186, ¶ 50-52.

{¶10} S.C. testified that she was at home with Adkins and her two younger sisters when Adkins touched her inappropriately. Her mother had just given birth a few days earlier and was at the hospital with S.C.'s youngest sibling while Adkins stayed home with her and her sisters. S.C. testified that she took a shower after dinner because Adkins told her to do so. She was fourteen years old at the time and testified that she always showered alone without the help of Adkins or her mother. She admitted that either Adkins or her mother occasionally helped her wash her hair because it was extremely long. On those occasions, however, S.C. would remain fully dressed and simply bend her head over the bathtub.

{¶11} S.C. testified that, when she was partially undressed, Adkins came into the bathroom and started the shower. Although he left the bathroom once he did so, he told S.C. to call him back in when she was ready to have her hair washed. S.C. waited until he left the bathroom before she finished undressing, stepped into the shower, and began to wash. She testified that her younger sister came into the bathroom while she was in the shower, and she told her sister to tell

Adkins that she had already washed her hair and did not need his help. According to S.C., she and her sister talked, and her sister said "it was a little creepy" that Adkins wanted to wash S.C.'s hair.

{¶12} S.C. testified that her sister was still there when Adkins returned to the bathroom and insisted on washing her hair. She stated that her sister wanted to stay in the bathroom, but Adkins made her leave. He then opened the shower curtain, set his phone on the windowsill, and used his hands to push S.C. back toward the shower head. Worried that Adkins might be recording the encounter on his phone, S.C. tried to turn her body away from the phone several times as Adkins washed her hair. She stated that, each time she did so, Adkins grabbed her and turned her back around. She specified that he turned her by the shoulders at first, but later turned her by putting his hands on her ribs under her breasts. S.C. testified that his actions made her uncomfortable because she could have repositioned herself if he had simply asked her to do so.

{¶13} S.C. testified that Adkins washed her hair slowly and brushed it down her back. As he did so, he ran his hands down the length of her back and "onto [her] butt because of how long [her] hair was." Adkins repeatedly combed through S.C.'s hair and slowed the progress of his hands each time he approached her butt. S.C. confirmed that he had never washed her hair that way before and that his actions made her uncomfortable.

{¶14} The next day, S.C. told a counselor at school that Adkins had touched her in the shower. She then repeated her account of the events while speaking with Detective Larry Brown. The detective interviewed S.C. at school and then spoke to Betts, S.C.'s sister, and Adkins. Betts told the detective that Adkins was not allowed to shower the girls and that he knew he was not allowed to shower them. The sister confirmed that Adkins had told S.C. to take a shower and had insisted on washing her hair. The sister told the detective that she left the bathroom because she was uncomfortable and thought it was "weird that [Adkins] was showering [] somebody [who was]

developed." She also told the detective that S.C. immediately came to her after their shower and shared that Adkins had acted inappropriately. Although Adkins denied any wrongdoing when he spoke with Detective Brown, he admitted that he had showered S.C.

{¶15} Adkins argues that the trial court erred when it denied his motion for acquittal because the State failed to present sufficient evidence of corroboration. Citing *State v. Bevly*, 142 Ohio St.3d 41, 2015-Ohio-475, he argues that corroborating evidence is an element of the offense of sexual imposition. Because the State did not set forth any evidence apart from S.C.'s own testimony, Adkins argues, the trial court erred when it failed to grant his motion for acquittal.

{¶16} In *State v. Bevly*, the Ohio Supreme Court considered the constitutionality of a sentencing provision in the gross sexual imposition statute. *Bevly* at ¶ 1. The Supreme Court contrasted the gross sexual imposition statute with the sexual imposition statute, noting that the two statutes were different because the latter made corroborating evidence "an element of the offense." *Id.* at ¶ 10. Adkins points to the quoted language as support for his argument that the State had to prove the element of corroboration, beyond a reasonable doubt, at trial. According to Adkins, the State failed to meet its burden because its case rested solely on S.C.'s uncorroborated testimony.

{¶17} Though *Bevly* referred to the corroboration requirement of the sexual imposition statute as "an element of the offense," *id.* at ¶ 10, it did not overrule, clarify, or otherwise alter the Supreme Court's decision in *State v. Economo*. In fact, *Bevly* favorably cited *Economo*, noting that the standard for corroboration was "low" and that "anything other than the victim's testimony" could satisfy the requirement. *Id.* at ¶ 20. Because *Bevly* did not alter the standard that the Supreme Court set forth in *Economo*, we reject any contention on the part of Adkins that *Bevly* elevated the State's burden of proof in sexual imposition cases.

{¶18}  Viewing the evidence in a light most favorable to the State, we cannot conclude that the trial court erred when it denied Adkins' motion for acquittal.  *See Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  S.C. testified that Adkins insisted on washing her hair.  She testified that her mother was not home at the time, that Adkins never washed her hair when she was naked, and that he repeatedly touched her body in a manner that made her uncomfortable.  She told her sister about the incident immediately after it occurred and reported it to the proper officials the very next day.  *See Roy*, 2014-Ohio-5186, at ¶ 50-52 (prompt reporting may serve as corroborative evidence).  Though he denied any wrongdoing, Adkins admitted that he had showered S.C.  *See id.* at ¶ 50 (defendant's admissions may serve as corroborative evidence).  Moreover, there was testimony that he knew he was not allowed to shower her and that his "weird" behavior made S.C.'s younger sister uncomfortable.  All of the foregoing evidence tended to support S.C.'s testimony, and therefore, served as corroborative evidence.  *See Economo*, 76 Ohio St.3d at 60.  Because the record supports the conclusion that the State set forth sufficient evidence of corroboration, we reject Adkins' argument that the trial court erred when it denied his motion for acquittal.  Adkins' first assignment of error is overruled.

Child Endangering and Obstructing Justice

{¶19}  "No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."  R.C. 2919.22(A).  "Although not stated in R.C. 2919.22(A), recklessness is the culpable mental state for the crime of child endangering."  *State v. Vanest*, 9th Dist. Summit No. 28339, 2017-Ohio-5561, ¶ 8.

> A person acts recklessly when, with heedless indifference to the consequences, [she] disregards a substantial and unjustifiable risk that [her] conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences,

[she] disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C). Whoever commits the foregoing offense is guilty of child endangering. R.C. 2919.22(E)(1).

{¶20} "No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime[,] * * * shall * * * induce any person to withhold testimony or information * * *." R.C. 2921.32(A)(4). Whoever commits the foregoing offenses is guilty of obstructing justice. R.C. 2921.32(C)(1).

{¶21} S.C. testified that, when she first reported what Adkins had done, she spent one night in foster care. Though she was placed back at home with her mom the following day, S.C. indicated that she did not feel safe there with Betts. She testified that Betts wanted her to lie about the incident so that the case against Adkins would be dismissed and he could lawfully come home. Betts stressed her inability to provide for four children on her own, particularly when one of those children was a newborn. She also threatened S.C. that there would be consequences if she failed to recant, including the loss of her phone and privileges. S.C. specified that Betts told her she "would be in [her] room and [] would only be allowed to come up to shower and eat." She testified that Betts spoke to her about recanting every day and that she felt significant pressure from those conversations.

{¶22} Detective Brown testified that, when he initially spoke with Betts about the accusations S.C. had made against Adkins, she was concerned about money loss and how the household would fare if Adkins went to jail. He stated that S.C. was forthcoming and engaged during their first interview, but different when he met with her for a follow-up interview. He testified that S.C. refused to make eye contact during their follow-up interview and tried to tell him that no inappropriate contact had occurred. When he met with her a third time, the detective

testified, S.C. had "big dark circles under her eyes" and appeared "very distraught." She eventually told the detective that Betts had instructed her to recant and had gone so far as to drive her to the courthouse to try to find someone to whom they could speak about having the charges dropped. S.C. also told him that Betts had threatened her with consequences if she did not recant and had stressed how much their family and her sisters would suffer. S.C. expressed to the detective that she was afraid to return to home if Betts found out she had spoken to him about being pressured to recant.

{¶23} Betts argues that the trial court erred when it denied her motion for acquittal because the State failed to prove that she created a substantial risk to S.C.'s health or safety or hindered the investigation in this matter. According to Betts, she spoke with S.C. about recanting because she thought S.C. had falsely accused Adkins. Because there was no evidence that her conversations with S.C. created a substantial risk to S.C.'s health or safety and, in any event, S.C. ultimately succeeded in testifying, Betts argues that her convictions for child endangering and obstructing justice are based on insufficient evidence.

{¶24} Viewing the evidence in a light most favorable to the State, we cannot conclude that the trial court erred when it denied Betts' motion for acquittal. *See Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Betts told Detective Brown that Adkins was not allowed to shower S.C. and that he knew he was not allowed to do so. Though he denied any inappropriate touching, Adkins admitted that he showered S.C. Betts, therefore, was aware that Adkins had disobeyed her instructions and had showered her fourteen-year-old daughter while she was not at home. She also was aware that S.C. immediately reported the incident and spoke with both a school counselor and the police. Even if Betts personally did not believe S.C., "[her] knowledge was sufficient to alert her to the potential for a problem * * *." *State v. Walker*, 9th Dist. Medina

No. 06CA0006-M, 2006-Ohio-5479, ¶ 19. She nevertheless repeatedly and insistently demanded that S.C. recant so that Adkins, S.C.'s alleged assailant, could return home. She threatened S.C. with the loss of personal privileges and emphasized how her sisters and family would suffer if she refused to lie in order to save Adkins. Betts' actions caused S.C. to feel unsafe and to change her statement when she met with Detective Brown for a follow-up interview. Although S.C. ultimately testified against Adkins, a rational trier of fact could have found that Betts induced her to withhold information for the purpose of hindering the prosecution or conviction of Adkins. *See* R.C. 2921.32(A)(4). Likewise, a rational trier of fact could have found that she violated a duty of care, protection, or support toward S.C. and substantially risked her health and safety when she pressured her to recant, with heedless indifference to the consequences. *See* R.C. 2919.22(A). *See also Walker* at ¶ 19; *In re C.G.-S.*, 9th Dist. Summit No. 29129, 2019-Ohio-370, ¶ 17 (father violated duty to child by failing to protect her from alleged assailant). Because Betts has not shown that the trial court erred by denying her motion for acquittal, we reject her argument to the contrary. Betts' first assignment of error is overruled.

### Betts' Assignment of Error II

**Ms. Betts' convictions are against the manifest weight of the evidence possession in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.**

### Adkins' Assignment of Error II

**[Mr. Adkins] convictions are against the manifest weight of the evidence possession in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.**

{¶25} In their second assignments of error, Betts and Adkins argue that their convictions are against the manifest weight of the evidence. We do not agree.

{¶26} When considering an argument that a criminal conviction is against the manifest weight standard, this Court is required to

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction[,]" *Thompkins*, 78 Ohio St.3d at 387.

{¶27} The defense sought to establish that S.C. falsely accused Adkins of sexual imposition because she disliked the restrictions that he and Betts had placed on her personal life. On cross-examination, S.C. admitted that Betts and Adkins discouraged her from having contact with her boyfriend. She also admitted that, at the time she accused Adkins, she was grounded because her grades were poor. Even so, S.C. testified that she had been grounded for some time, so it was not a recent event. Likewise, she testified that she had already been in a relationship with her boyfriend for several months, despite the fact that Betts and Adkins disapproved. S.C. was adamant that she did not fabricate the accusations she made against Adkins. She testified that she disclosed what happened because she wanted him to be kept away from her.

{¶28} The defense drew significant attention to S.C.'s cell phone and her actions regarding its content. After S.C. was placed in foster care a second time, Betts demanded that she return her cell phone. S.C. did so, but performed a factory reset on the phone before handing it over. The defense produced evidence that S.C. told her cousin and her uncle, either through Facebook Messenger or in person, that Detective Brown had told her to reset the phone. While testifying, however, S.C. denied that the detective ever instructed her to do so. She testified that

she reset the phone because she wanted to protect her personal information. Likewise, Detective Brown denied that he ever told S.C. to reset her phone. While the defense drew much attention to the fact that the phone had been reset, no evidence was ever presented that it contained any information relevant to the defense.

{¶29} When S.C.'s younger sister testified, her testimony did not align with S.C.'s. She acknowledged that Adkins had told S.C. to shower, but claimed that she remembered S.C. asking him to wash her hair. She denied that Adkins told her to leave the bathroom while he was with S.C. or that she found the situation weird or "creepy." She claimed that S.C. was the one who had felt that way and had used those words to describe the situation. She also denied that Adkins had been home since the shower incident occurred.

{¶30} The younger sister testified that she initially believed S.C., but no longer did. She claimed to have come to that conclusion on her own without having discussed the case or her testimony with Betts or Adkins. Nevertheless, the State was able to point out several instances where she inadvertently mentioned having discussed something about the case with Betts. For example, she testified that she and Betts had tried balancing a cell phone on their bathroom windowsill to test S.C.'s statement and had been unable to do so. During the younger sister's testimony, the State confronted her with several portions of the recorded interview she had with Detective Brown. Many of her interview statements conflicted with her trial testimony. For example, she told the detective that Adkins was the one who wanted to wash S.C.'s hair and that she (the younger sister) found the situation weird and uncomfortable. When confronted with her prior statements, the younger sister maintained that she no longer believed S.C.

{¶31} Adkins testified in his own defense and denied that he engaged in sexual contact with S.C. He claimed that S.C. called him into the shower and asked him to wash her hair.

Although he knew Betts did not want him to be around S.C. when she was in the shower, he testified that nothing could prevent him from helping "[his] kids" if they needed something from him. Likewise, he admitted that he ignored the protection order and came home after its issuance because he was "completely enwrapped in [his] family" and could not stay away.

{¶32} Adkins claimed that he was exchanging messages with Betts and his brother almost the entire time that he was in the bathroom with S.C., except for when he placed his phone on the windowsill. He testified that he never touched her naked body, but, when answering one of the prosecutor's questions, he said that he "bent [S.C.] over and washed her hair in the tub." When the prosecutor questioned his word choice, Adkins claimed that he misspoke. He testified that he never physically touched S.C. to bend her over and that he had her cover up while he washed her hair. According to Adkins, S.C. was very angry around the time that she accused him because she had been grounded, family life was hectic with the recent birth of her youngest sibling, and she was not being allowed to engage in various social activities.

Sexual Imposition

{¶33} Adkins argues that his conviction for sexual imposition is against the manifest weight of the evidence because there was "no evidence" that he was sexually aroused or gratified by the act of washing S.C.'s hair. *See* R.C. 2907.01(B) (sexual contact defined). According to Adkins, S.C. was the only one who testified that he touched any part of her body other than her hair. Moreover, Adkins argues, S.C. never communicated to him during the shower that she felt uncomfortable. He asserts that the jury lost its way when it convicted him solely on the basis of her uncorroborated testimony.

{¶34} To the extent Adkins argues that there was "no evidence" he was sexually aroused or gratified by the act of washing S.C.'s hair, his argument sounds in sufficiency rather than weight.

"A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence. An argument that the State failed to prove one of the elements of a crime is one sounding in sufficiency * * *." (Internal citation omitted.) *State v. Hayes*, 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 9. As Adkins' second assignment of error only presents us with a challenge to the weight of the evidence, we must limit our review to that issue. *See State v. Poland*, 9th Dist. Medina No. 14CA0003-M, 2014-Ohio-5737, ¶ 24.

{¶35} Having reviewed the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against Adkins' conviction for sexual imposition. *See Thompkins*, 78 Ohio St.3d at 387. The jury was essentially presented with two conflicting versions of the events. S.C. claimed that Adkins repeatedly stroked down her back and across her bare buttocks while showering her hair. Adkins denied doing so and claimed that he only washed her hair while she bent forward in the shower and covered herself. Although S.C.'s younger sister attempted to vouch for Adkins at trial, the State demonstrated that her testimony varied dramatically from the statement she gave Detective Brown. It also demonstrated that at least parts of her testimony were false. For example, while she claimed that Adkins had not returned home since the incident, Adkins then took the stand and admitted that he had. As the trier of fact, the jury was in the best position to judge the credibility of the witnesses and to evaluate their testimony accordingly. *See State v. Simmons*, 9th Dist. Lorain No. 18CA011262, 2020-Ohio-614, ¶ 10. This Court has repeatedly recognized that "[a] verdict is not against the manifest weight of the evidence because the finder of fact [chose] to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Upon review, Adkins has not shown that this is the exceptional case where the jury lost its way by convicting him. *See Otten* at 340. Accordingly, his second assignment of error is overruled.

Child Endangering and Obstructing Justice

{¶36}  Betts argues that the jury lost its way when it convicted her because her conduct did not place S.C.'s health or safety at a substantial risk or stop her from testifying.  She notes that, even when S.C. entered foster care, child protective services did not deem her home unsafe for her other daughters.  She further argues that the greater weight of the evidence showed that she only spoke with S.C. about recanting because she thought S.C. had falsely accused Adkins.

{¶37}  Having reviewed the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against Betts' convictions.  *See Thompkins*, 78 Ohio St.3d at 387.  Although she cites the decision of child protective services not to remove her other children from her home as evidence that none of her children were at a substantial risk of harm, no one from child protective services testified at trial.  The motivations or reasoning behind the decisions of that agency are not a part of the record, and this Court will not engage in speculation.  Because Betts was only charged with child endangering with respect to S.C., the only question for the jury was whether she violated a duty *to S.C.* and, in doing so, substantially risked her health and safety.

{¶38}  As previously noted, even if Betts personally doubted the veracity of S.C.'s accusations, "[her] knowledge was sufficient to alert her to the potential for a problem * * *." *Walker*, 2006-Ohio-5479, at ¶ 19.  She had previously instructed Adkins not to shower S.C.  She knew that he had ignored her directive and had showered her naked, fourteen-year old daughter while she (Betts) was not at home.  She also knew that S.C. quickly reported the incident to the authorities.  The jury was in the best position to listen to S.C.'s testimony, as well as the testimony of her younger sister, Adkins, and the other witnesses, and judge their credibility.  *See Simmons*, 2020-Ohio-614, at ¶ 10.  The jury heard testimony that Betts had four children, including a newborn, and that her primary concern was being unable to care for her children without Adkins.

The jury reasonably could have concluded that, by repeatedly pressuring S.C. to recant in spite of the evidence that supported her allegations, Betts endangered S.C. and obstructed justice. *See* R.C. 2919.22(A) and 2921.32. Betts has not shown that this is the exceptional case where the jury lost its way by convicting her. *See Otten* at 340. Accordingly, her second assignment of error is overruled.

### Betts' Assignment of Error III

**The trial court erred as a matter of law by refusing to compel the State to file a bill of particulars in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution[.]**

### Adkins' Assignment of Error III

**The trial court erred as a matter of law by refusing to compel the State to file a bill of particulars in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution[.]**

{¶39} In their third assignments of error, Betts and Adkins argue that the trial court erred when it refused to compel the State to file a bill of particulars. For the following reasons, we reject their arguments.

{¶40} Crim.R. 7(E) provides that, when a defendant makes a timely request for a bill of particulars, "the prosecuting attorney shall furnish the defendant with [one] setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense." "This Court has written that, notwithstanding [Crim.R.] 7(E), if 'the prosecutor permitted a full examination of his file by defense counsel, a bill of particulars is not required.'" *State v. Jamison*, 9th Dist. Summit No. 27664, 2016-Ohio-5122, ¶ 6, quoting *State v. Sarnescky*, 9th Dist. Summit No. 12257, 1986 WL 2228, *1 (Feb. 12, 1986). Although "the denial of a timely request for a bill of particulars should never occur," the more important question is whether the

defendant suffered "prejudice as a consequence of the denial * * *." *State v. Chinn*, 85 Ohio St.3d 548, 569 (1999).

{¶41} Initially, we note that Adkins never filed a motion for a bill of particulars. Only Betts filed a motion for a bill of particulars in her criminal case. Because Adkins never made a timely request for a bill of particulars, the State was not required to furnish one. *See* Crim.R. 7(E). Accordingly, his third assignment of error is overruled.

{¶42} It is undisputed that Betts filed a motion for a bill of particulars and the State, citing open-file discovery, chose not to furnish one. Betts argues that she was prejudiced by the State's refusal because it affected her ability to defend against her child endangering charge. According to Betts, before trial, she believed the sole basis for her charge was the fact that she had encouraged S.C. to recant. At trial, however, the State alleged a second basis for the charge: the fact that Betts had allowed Adkins to live at their home after a protection order had been issued against him and had taken her daughters on a weekend excursion with him. Betts claims that she was unaware the State intended to use that additional conduct against her at trial. She notes that she was charged with child endangering several weeks before Detective Brown learned of that additional conduct, so it could not have given rise to her charge. Because the State never responded to her request to clarify the basis of her charge, Betts argues, the trial court should have dismissed its case.

{¶43} We begin by noting that the additional conduct the State alleged in favor of Betts' child endangering charge occurred before she was charged. While the State did not *discover* that conduct until after it charged Betts, she *engaged* in that conduct before her charges were filed. She was charged on May 4, 2019, and the weekend excursion she took with her daughters and Adkins began on April 19, 2019. Moreover, S.C. indicated that Adkins began staying at their home again one to two days after the protection order against him issued on April 12, 2019. The fact that

Detective Brown was subjectively unaware of Betts' additional conduct at the time he pursued charges against her is inapposite. When her additional conduct came to light, the State provided her with the new evidence it had uncovered (e.g., the receipts and surveillance footage from the hotel where she and Adkins took the children). Had the State filed a bill of particulars, it could have amended its filing to reflect the inclusion of her additional conduct as a basis for her child endangering charge. *See* Crim.R. 7(E).

{¶44} This Court would note that any alleged confusion about the basis of Betts' charges could have been avoided if the State had simply followed the plain language of Crim.R. 7 and furnished her with a bill of particulars. That fact notwithstanding, Betts has not established actual prejudice as a result of the State's failure to do so. *See Chinn*, 85 Ohio St.3d at 569. Due to open-file discovery, she was able to make a full examination of the prosecutor's file before trial. *See Jamison*, 2016-Ohio-5122, at ¶ 6, quoting *Sarnescky*, 1986 WL 2228, at *1. She was aware of all the evidence in the State's possession, and moreover, knew the jury would hear that evidence. Betts and Adkins were tried together, and the evidence that he was staying in the home and vacationed with the family after the issuance of a protection order bore directly upon his charge for violating a protection order. Even if Betts believed that the State would not be using that same evidence as support for her child endangering charge, it is not clear how a bill of particulars would have aided her defense. She took the position that S.C. had falsely accused Adkins. Her defense was essentially that she did not endanger S.C. by seeking to clear his name or reunite their family because he was innocent. She has failed to explain how her defense would have changed had she known that the State would introduce more evidence that she was supporting Adkins. *See* App.R. 16(A)(7). Finally, we have already determined that the State set forth sufficient evidence to convict Betts of child endangering. *See* Discussion of Betts' Assignment of Error Number One,

*supra*. In reaching that determination, this Court did not consider the additional conduct that came to light after the State filed charges against Betts. Because Betts has not shown that the State's failure to provide her with a bill of particulars affected her substantial rights, *see* Crim.R. 52(A), her third assignment of error is overruled.

### Adkins' Assignment of Error IV

**The trial court erred when it allowed testimony of other bad acts in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.**

{¶45} In his fourth assignment of error, Adkins argues that the trial court erred when it allowed the State to introduce evidence of prior, bad acts he allegedly committed against S.C. For the following reasons, we reject his argument.

{¶46} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). Yet, "evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue." *State v. Hartman*, Slip Opinion No. 2020-Ohio-4440, ¶ 22. Moreover, "'when a defendant offers evidence regarding his good character, the introduction opens the door for the prosecution to inquire about [his] bad character.'" *State v. Granakis*, 9th Dist. Wayne No. 15AP0053, 2017-Ohio-8428, ¶ 8, quoting *State v. Mills*, 9th Dist. Medina Nos. 02CA0037-M, 02CA0038-M, 2002-Ohio-7323, ¶ 54. *Accord State v. Wright*, 48 Ohio St.3d 5, 8 (1990).

{¶47} Adkins testified that he had never touched S.C. inappropriately and that he would never do anything to hurt his children. On cross-examination, the State asked him whether he was aware that S.C. had told Detective Brown that he (Adkins) had touched her inappropriately in the past. Adkins denied having any knowledge of those accusations and claimed that he had not listened to all of the recordings from S.C.'s interviews. On redirect, he testified that he had not

touched S.C., that he would have left the bathroom immediately if he had known she was uncomfortable, and that he "would do nothing, ever, to make [his] kids uncomfortable."

{¶48} Following Adkins' testimony, the State sought to recall Detective Brown. The State intended to have the detective authenticate portions of S.C.'s recorded interviews. Those portions were not played during the State's case-in-chief because they contained allegations of Adkins' past misconduct. Adkins noted that the parties had agreed to withhold those portions of S.C.'s interviews, thereby avoiding any argument about their admission. He argued that the admission of her statements on rebuttal would violate Evid.R. 404(B). Moreover, he argued that their admission through Detective Brown would violate his rights under the Confrontation Clause, as he would not be able to cross-examine S.C. about the statements. The State responded that it had not intended to play S.C.'s recorded statements until Adkins opened the door for their admission.

{¶49} The trial court ultimately determined that the State would be permitted to call S.C. as a rebuttal witness. It refused to allow the State to play her recorded statements, as it found that they constituted hearsay and, in any event, would only serve to bolster her testimony if she testified on rebuttal. Over the State's objection, the court concluded that the State would be limited to calling S.C. and asking her about prior acts of misconduct on the part of Adkins. The court determined that her testimony was admissible because Adkins had opened the door to that testimony through his statements on direct and redirect examination.

{¶50} When S.C. took the stand on rebuttal, she testified that Adkins had touched her inappropriately in the past and had done things to make her uncomfortable. She testified that, about two to three months before the shower incident, she fell asleep with him on the couch and awoke to find him sticking his hand down the back of her shirt and playing with her bra strap. As

she continued to feign sleep, Adkins began rubbing around her lips and put his hand in her mouth. She then acted as if she had just woken up and left the room. Apart from that incident, she testified, Adkins sometimes smacked her butt or adjusted her bra strap. She also testified that he would comment on the size of her breasts and her butt and that he often stared at her body.

{¶51} Adkins argues that the trial court erred when it admitted S.C.'s testimony on rebuttal. He argues that her testimony was irrelevant to his charges and extremely prejudicial because it only served as propensity evidence and/or evidence of his bad character. Yet, Adkins opened the door to S.C.'s accusations of prior misconduct. *See State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 76. The State presented her rebuttal testimony in direct response to his testimony that he had never touched her inappropriately and "would do nothing, ever, to make [his] kids uncomfortable." While other acts evidence is generally prohibited, "courts will not find prejudicial error when the defense 'opens the door' to such evidence." *State v. Brooks*, 9th Dist. Medina No. 07CA0111-M, 2008-Ohio-3723, ¶ 53. *Accord State v. Smith*, 9th Dist. Lorain No. 99CA007399, 2000 WL 1675052, *4 (Nov. 8, 2000). Because Adkins opened the door to the admission of S.C.'s rebuttal testimony, we cannot conclude that the trial court abused its discretion by admitting it. Adkins' fourth assignment of error is overruled.

III.

{¶52} Betts' and Adkins' assignments of error are overruled. The judgments of the Barberton Municipal Court are affirmed.

Judgments affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

 

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellants.

MICHELLE BANBURY, Assistant Prosecuting Attorney, for Appellee.