[Cite as *State v. Snapp*, 2025-Ohio-5276.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                          :

    Appellee,                          :        CASE NO. CA2023-12-083

                                                  :

- vs -                                 :        OPINION AND
                                                 JUDGMENT ENTRY
                                       :         11/24/2025

WILLIAM T. SNAPP, JR.,                 :

    Appellant.                          :

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2023 CRB 0972

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan; and Jacob D. Long, for appellant.

## O P I N I O N

**BYRNE, P.J.**

{¶ 1} William Snapp appeals from his conviction for sexual imposition in the

Clermont County Municipal Court. For the reasons detailed below, we affirm.

## I. Factual and Procedural Background

{¶ 2}  In March 2023, Snapp, a 56-year-old man, matched with C.T., a 15-year-old juvenile, on Grindr, a social media platform designed for men seeking same-sex relationships. One evening, C.T. messaged Snapp and offered to perform oral sex in exchange for a car ride. Snapp agreed, and C.T. left his family's home in Snapp's car. Early the next morning, while C.T. was still away from home, C.T.'s mother discovered that he was missing and contacted the police. Upon returning home, C.T. informed the police officers that he performed fellatio on Snapp during their car ride.

{¶ 3}  Following C.T.'s disclosure, Sergeant Chris McMillan conducted an undercover investigation. Using C.T.'s Grindr account, Sergeant McMillan messaged Snapp asking if they could arrange the "same deal as last time?" After a brief exchange, Snapp agreed to meet but stated that he "didn't need the head" this time; instead, he requested "some good pics," and added, "I want your ass next time."  When Snapp arrived at the designated location, Sergeant McMillan approached and asked him to come to the police station for an interview. During questioning, Snapp admitted that he and C.T. had "started oral sex but we didn't finish."

{¶ 4}  On March 28, 2023, Snapp was charged by complaint with one count of sexual imposition in violation of R.C. 2907.06, a third-degree misdemeanor. Snapp pleaded not guilty, and the matter proceeded to a jury trial.

## II. Trial Testimony and Evidence

### A. The State's Case

### 1. C.T.'s Testimony

{¶ 5}  At trial, C.T. testified that he was 15 years old when he performed oral sex on Snapp and that he did so following their exchange on Grindr. C.T. stated that upon

entering Snapp's car, there was little conversation before C.T. began performing oral sex. He explained that he got "straight to the point" and confirmed that he placed his mouth on Snapp's penis, continuing until they arrived at the destination.

### 2. Sergeant Chris McMillan's Testimony

{¶ 6} Sergeant McMillan of the Goshen Township Police Department testified that he responded to a report of a missing juvenile, which led to the investigation into C.T.'s whereabouts. Sergeant McMillan testified that he began posing as C.T. while messaging Snapp on Grindr. The two had the following exchange:

> [Sergeant McMillan posing as "C.T."]: Hey I'm stuck at McDonald's in Goshen. I need a ride . . . same deal as last time?
>
> [Sergeant McMillan posing as "C.T."]: I need to go to Mitford
>
> [Sergeant McMillan posing as "C.T."]: Please I'm desperate.
>
> [Snapp]: Hey there. Got a lot going on today. Don't think I can help out this time. So sorry.
>
> [Sergeant McMillan posing as "C.T."]: Your online I need help please.
>
> [Sergeant McMillan posing as "C.T."]: I'll take good care you of
>
> [Sergeant McMillan posing as "C.T."]: Pleaseeeeeee I walk to the road behind McDonald's no one will see me get in
>
> [Sergeant McMillan posing as "C.T."]: I'll make it worth the time [eggplant emoji][1]
>
> [Snapp]: I don't really care what people see baby. I know you would. Just not sure I have the time [right now].

---

1. An eggplant emoji is an icon sometimes used suggestively during texting conversations to represent a penis. *C.K. v. W. Carroll Special School Dist. Bd. of Edn.*, 2025 U.S. Dist. LEXIS 120015, *14 (W.D. Tenn. June 2, 2025) (finding a Snapchat photo of the plaintiff with an eggplant emoji, a "symbol typically representing a penis," imposed over his lips, among other evidence, raised a jury question regarding harassment); *Mothersbaugh v. State*, 2022 Ind. App. LEXIS 1183, *18 (October 7, 2022) (noting text message including eggplant emoji as supporting "disturbing" and sexual nature of adult's communications with 14-year-old child).

[Sergeant McMillan posing as "C.T."]: I don't care either daddy just need a ride bad

[Snapp]: Okay. Can be there in about 20. Don't really need the head [right now]. Just sent me some good pics for now and I want your ass next time.

[Snapp]: Deal?

[sic].

{¶ 7} Sergeant McMillan testified that Snapp arrived at the Goshen McDonald's a short time later. When Snapp parked, Sergeant McMillan approached Snapp's car and requested that Snapp come to the police station for an interview, to which Snapp agreed. During the interview, Sergeant McMillan and his partner told Snapp that C.T. was 15 years old and inquired about their encounter. Sergeant McMillan testified that when confronted with C.T.'s allegation that they had engaged in oral sex, Snapp responded, "Well, I mean . . . he started oral sex, but we didn't finish."

## B. The Defense's Case

{¶ 8} Snapp testified on his own behalf. Snapp began his testimony by acknowledging that he met C.T. on Grindr and agreed to give him a ride, understanding that they could "work something out." Snapp testified that he asked C.T. "if he was at least 18" and C.T. responded "yes." Snapp then described how C.T. "kind of leaned over and reached over and started pretty much just messing with my, my buckle and my pants."

{¶ 9} Snapp testified that he asked C.T. if there was somewhere they could stop along the way because he found it difficult to continue driving. He stated that C.T. mentioned the idea of a threesome, but Snapp said that he was not interested. Snapp then denied that C.T. performed oral sex on him, specifically asserting that C.T.'s mouth did not touch his penis. When cross-examined about his admission during the interview with Sergeant McMillan that C.T. "started oral sex," Snapp asserted that his words had

- 4 -

been taken out of context. Snapp explained that he only admitted that C.T. "started oral sex," but that C.T. had not "performed" oral sex. Snapp testified:

> I said . . . because what I said was he started oral sex. Which in order to start oral sex you would have to unbuckle my pants and take down my short before you could actually perform sex. So, starting it is a lot different than doing it.

### C. Verdict

{¶ 10} The trial court instructed the jury on the applicable law, including on the elements of the offense of sexual imposition. Following deliberations, the jury found Snapp guilty of sexual imposition. Subsequently, the trial court sentenced Snapp to 58 days in jail. Additionally, the court verbally informed Snapp that he would have to register as a Tier I sex offender under the Adam Walsh Act. There is no dispute, however, that the trial court failed to include the Tier I sexual offender status in the written sentencing entry. Snapp timely appealed, raising five assignments of error for review.

### III. Law and Analysis

### A. Jury Instructions

{¶ 11} Snapp's Assignment of Error No. 1 states:

> THE JURY INSTRUCTIONS OMITTED THREE SEXUAL IMPOSITION ELEMENTS.

{¶ 12} Snapp was convicted of sexual imposition in violation of R.C. 2907.06. At the time, with respect to the issues in this appeal, the statute stated:

> (A) No person shall have *sexual contact* with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> . . .
>
> (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person,

and the offender is at least eighteen years of age and four or more years older than such other person.

R.C. 2907.06(A)(4).[2] (Emphasis added.) The sexual imposition statute further provided that "No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence." R.C. 2907.06(B). This provision is referred to as the "corroboration requirement." *State v. Curtis*, 2009-Ohio-192, ¶ 93 (12th Dist.).

{¶ 13} In its instructions to the jury at trial, the municipal court instructed the jury as to the offense of sexual imposition as follows:

> Before you can find the defendant guilty of Sexual Imposition, you must find beyond a reasonable doubt . . . the defendant had sexual contact with another who was not his spouse and the other person was thirteen years of age or older but less than sixteen years of age, whether or not the defendant knew the age of such person, and the defendant was at least eighteen year of age and four or more years older than such other person.
>
> I have used the term "sexual contact." The term sexual contact means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

The jury instruction contained no reference to the corroboration requirement.

{¶ 14} In his first assignment of error, Snapp contends the trial court erred in omitting three elements of the offense of sexual imposition from the sexual imposition jury instruction. Specifically, Snapp argues the trial court erred in excluding the elements of (1) corroboration, (2) causation, and (3) the victim "hav[ing] sexual contact with the offender." Snapp did not object to the jury instructions at the time they were given by the trial court, so we must apply a plain error review to Snapp's arguments. *State v. Mott*,

---

2. R.C. 2907.06 was amended by 2024 S.B. 109. A new version of the statute went into effect on March 21, 2025. Our analysis in this opinion only concerns the previous version of the statute in effect at the time Snapp was convicted.

2023-Ohio-2268, ¶ 16 (12th Dist.) (holding that a failure to object to jury instructions waives all but plain error review). We will analyze these arguments after addressing the applicable standard of review.

### 1. Standard of Review

{¶ 15} "A trial court has the duty to instruct the jury as to the applicable law on all issues presented in the case that are supported by the evidence." *Enderle v. Zettler*, 2006-Ohio-4326, ¶ 35 (12th Dist.). A trial court must "fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Davis*, 2016-Ohio-1166, ¶ 27 (12th Dist.).

{¶ 16} Jury instructions are matters that are left to the sound discretion of the trial court. *State v. Brannon*, 2015-Ohio-1488, ¶ 20 (12th Dist.). Moreover, "this court may not reverse a conviction based upon faulty jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. Grimm*, 2019-Ohio-2961, ¶ 26 (12th Dist.). Therefore, when reviewing a trial court's jury instructions, this court must affirm a conviction if the trial court's jury instructions, when taken in their entirety, "'fairly and correctly state the law applicable to the evidence presented at trial.'" *Mott* at ¶ 18, quoting *Davis* at ¶ 28.

{¶ 17} Crim.R. 30(A) provides that an objection to a jury instruction (1) must be specific and (2) must be made before the jury retires to consider its verdict. The purpose of these two requirements is to bring any error to the attention of the trial court so it may provide proper instructions before the jury commences deliberations and to provide a complete record for appellate review. *State v. Rhodus*, 2023-Ohio-3678, ¶ 13 (12th Dist.), citing *State v. Glover*, 2017-Ohio-7360, ¶ 51 (12th Dist.). A party's failure to comply with Crim.R. 30(A) waives all but plain error. *Id.*

{¶ 18} Pursuant to Crim.R. 52(B), "Plain errors or defects affecting substantial

rights may be noticed although they were not brought to the attention of the court." That rule "places three limitations on a reviewing court's decision to correct an error not raised before the trial court." *State v. Fuell*, 2021-Ohio-1627, ¶ 70 (12th Dist.), citing *State v. Barnes*, 2002-Ohio-68, ¶ 20. "First, an error, 'i.e., a deviation from a legal rule,' must have occurred." *Fuell* at ¶ 10, quoting *Barnes* at ¶ 20. "Second, the error complained of must be plain, i.e., it must be 'an "obvious" defect in the . . . proceedings.'" *Id.* Stated otherwise, the error must be fundamental, palpable, and obvious on the record such that it should have been apparent to the court without an objection. *State v. Barnette*, 2013-Ohio-990, ¶ 30 (12th Dist.). "Third, the error must have affected 'substantial rights.'" *Fuell* at ¶ 70, quoting *State v. Martin*, 2018-Ohio-3226, ¶ 28. This means the error must have affected the outcome of the proceedings. *Barnes* at ¶ 27. An appellate court will take notice of plain error with "utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Baldev*, 2005-Ohio-2369, ¶ 12 (12th Dist.).

### 2. Corroboration Requirement

{¶ 19} Snapp argues that the trial court erred because it should have included an instruction regarding corroborating evidence in the sexual imposition instruction. As mentioned above, R.C. 2907.06(B) states that "[n]o person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence." The Supreme Court of Ohio in *State v. Economo*, 76 Ohio St.3d 56 (1996), held that "[t]he corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged." *Id.* at 60. The supreme court further explained that "[s]light circumstances or evidence which tends to support the victim's testimony is satisfactory." *Id.* In other words, "[t]he corroboration requirement of R.C. 2907.06(B) is a threshold inquiry of legal sufficiency to be determined by the trial judge, not a question of proof . . . [for] the

factfinder." *Id.* Applying *Economo*, we have also held that corroboration is not an element of the offense, but a mere ancillary evidentiary requirement. *State v. Curtis*, 2009-Ohio-192, ¶ 93 (12th Dist.).

{¶ 20} But Snapp argues that corroboration is now an element of the offense, contrary to *Economo* and our case law clearly stating otherwise, because that case law has been "undone" by the U.S. Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Snapp is incorrect. *Apprendi* addressed an unrelated issue: whether a trial court may enhance a criminal defendant's sentence based on facts not found by the jury.

{¶ 21} Snapp also relies on the Supreme Court of Ohio's decision in *State v. Bevly*, 2015-Ohio-475. In *Bevly*, the supreme court considered the constitutionality of a sentencing provision in the gross sexual imposition statute. *Bevly* at ¶ 1. In its analysis, the court contrasted the gross sexual imposition statute with the sexual imposition statute, noting that the latter required corroborating evidence as "an element of the offense." *Id.* at ¶ 10. However, while *Bevly* referred to the corroboration requirement of the sexual imposition statute as "an element of the offense," it did not overrule, clarify, or otherwise alter the Supreme Court of Ohio's decision in *Economo*, which held otherwise. *State v. Betts*, 2020-Ohio-4800, ¶ 17 (9th Dist.). Rather, *Bevly* cited *Economo* favorably and reiterated that the standard for corroboration was "low," i.e., "anything other than the victim's testimony" could satisfy the corroboration requirement. *Bevly* at ¶ 20. As a result, we find the *Bevly*'s reference to corroboration as an "element of the offense" was mere dicta. "Dicta" refers to expressions in an opinion that go beyond the facts necessary to resolve the issues at hand and are therefore not binding in subsequent cases as legal precedent. *State v. Sallis*, 2020-Ohio-3924, ¶ 17 (12th Dist.); *State v. Bowers*, 2019-Ohio-3207, ¶ 16 (1st Dist.).

- 9 -

{¶ 22} This determination is in line with other Ohio appellate decisions continuing to apply the holding in *Economo* that the corroboration requirement of R.C. 2907.06(B) is merely a threshold of legal sufficiency and not a question of proof for the finder of fact. *State v. Guerra*, 2023-Ohio-2920, ¶ 38 (3d Dist.); *State v. Betts*, 2020-Ohio-4800, ¶ 18 (9th Dist.).

{¶ 23} Therefore, consistent with the Ohio Supreme Court's decision in *Economo* and this court's decision in *Curtis*, we hold that the corroboration requirement remains a matter for determination by the trial court judge, not a jury. *See State v. Miller*, 2019-Ohio-3423, ¶ 16 (12th Dist.) (applying *Economo*). In the case before us, the trial court found sufficient evidence of corroboration by submitting the charge of sexual imposition to the jury. R.C. 2907.06(B) did not require the trial court to refer to the corroboration requirement in its jury instructions. Snapp fails to show there was a "deviation from a legal rule" for purposes of establishing plain error. The jury was provided with a "fair and correct statement of the law." *Mott*, 2023-Ohio-2268, at ¶ 24. Snapp's argument to the contrary is without merit.

### 3. Causation and Sexual-Contact-With-The-Defendant Elements

{¶ 24} Snapp also argues that the trial court erred in excluding two more elements of sexual imposition from the jury instruction: causation and the victim "hav[ing] sexual contact with the offender."

{¶ 25} According to the plain language of the statute, sexual imposition can occur in three different forms: (1) the offender having "sexual contact with another [the victim];" (2) the offender "caus[ing] another [the victim] to have sexual contact with the offender;" or (3) the offender "caus[ing] two or more other persons to have sexual contact." R.C. 2907.06(A). Since the sexual imposition statute is written in the disjunctive, the state only needs to prove one of the three forms of sexual imposition for a person to be convicted

under the statute. *See State v. Shepherd*, 2017-Ohio-328, ¶ 17 (12th Dist.). Both the "missing" elements identified by Snapp (that is, the causation element and the "hav[ing] sexual contact with the offender" element) relate to the second form of sexual imposition: "the offender "caus[ing] another, not the spouse of the offender, to have sexual contact with the offender."

{¶ 26} Snapp is correct that the trial court's sexual imposition jury instruction did not refer to the second form of sexual imposition, or what Snapp describes as that second form's two elements, in the sexual imposition jury instruction. Instead the trial court only instructed the jury on the first form of sexual imposition: the offender having "sexual contact with another [the victim]."

{¶ 27} Snapp argues that by omitting the elements of the second form of sexual imposition from its jury instruction, the trial court prevented the jury from considering his defense that he did not cause C.T. to have sexual contact with him. But the opposite is true: whether or not the court's omission of the elements of the second form of sexual imposition was an "error," the omission *benefitted* Snapp by limiting the forms of sexual imposition that the jury could convict Snapp of committing. That is, by only instructing the jury on the first form of sexual imposition, the trial court prevented the jury from being able to convict Snapp of the second form of sexual imposition. The omission thus caused no prejudice to Snapp, and Snapp cannot prove plain error. *State v. Evick*, 2019-Ohio-2791, ¶ 45 (12th Dist.). Snapp's argument regarding the omission of the elements of the second form of sexual imposition from the jury instructions has no merit.

{¶ 28} Consequently, there was no error, plain or otherwise, as the jury instructions fairly and correctly stated the law applicable to the evidence presented. The trial court properly instructed the jury on the first form of sexual imposition. Therefore, Snapp fails to demonstrate a "deviation from a legal rule" necessary to establish plain error, as "the

jury was provided with a fair and correct statement of the law." *Mott*, 2023-Ohio-2268 at ¶ 24. Snapp's argument to the contrary is overruled.

{¶ 29} We overrule Snapp's Assignment of Error No. 1.

### B. Sufficiency of the Evidence

{¶ 30} Snapp's Assignment of Error No. 2 states:

THE STATE ELICITED INSUFFICIENT EVIDENCE TO CONVICT SNAPP OF SEXUAL IMPOSITION UNDER R.C. 2907.08(A)(4).

{¶ 31} In support of his second assignment of error, Snapp argues his conviction is not supported by sufficient evidence. During trial, Snapp challenged the sufficiency of the evidence by Crim.R. 29 motion for acquittal after the conclusion of the state's case, and again prior to submission to the jury. We will describe Snapp's sufficiency arguments in more detail below.

### 1. Standard of Review

{¶ 32} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Davidson*, 2018-Ohio-1779, ¶ 14 (12th Dist.). "When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Madden*, 2024-Ohio-2851, ¶ 31, citing *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St. 3d 259 (1991), paragraph two of the syllabus.

### 2. Analysis

{¶ 33} As already explained, Snapp was convicted of the first form of sexual

imposition, which states, "No person shall have sexual contact with another…" when the victim is "thirteen years of age or older but less than sixteen years of age," and the offender "is at least eighteen years of age and four or more years older" than the victim. R.C. 2907.06(A)(4). In the present case, the state presented evidence that C.T. was 15 years old at the time of the incident and Snapp was 56 years old. Snapp does not dispute in this appeal that the state presented evidence satisfying the age elements of R.C. 2907.06(A)(4).

{¶ 34} Snapp's sufficiency argument instead relates to the "sexual contact" element of the sexual imposition offense. The Revised Code defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "Sexual contact" is distinct from "sexual conduct," which is defined as "vaginal intercourse between a male and female; and intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A). "Sexual activity," on the other hand, "means sexual conduct or sexual contact, or both." R.C. 2907.01(C).

{¶ 35} Snapp attacks the sufficiency of the evidence in three ways.

{¶ 36} First, Snapp argues that "[a]t no point did [C.T.] or Snapp testify that [C.T.] touched Snapp's genitals or other erogenous zone." This is not true. On the contrary, C.T. specifically testified that he touched Snapp's penis with his mouth during oral sex:

> Q. What did you do with Mr. Snapp?
>
> A. I gave him head.
>
> Q. You gave him head, okay.

A. Which means oral to penis.

Q. Okay, so you your . . . you stuck your mouth on his penis?

A. Yes.

Q. And you did actually make contact with Mr. Snapp's penis?

A. Yes.

Q. You did place your mouth on his penis?

A. Yes.

Q. Okay and was there a point that he asked you to stop?

A. No.

Q. Okay, did you stop at some point?

A. Yes.

We note that Snapp quoted virtually this same testimony in his brief, so it is difficult to understand how he could argue that there was no testimony that C.T. touched Snapp's genitals or other erogenous zone. The best possible explanation is that Snapp's brief contains a typographical error transposing the words "Snapp" and "C.T.," and he meant to say that "[a]t no point did [C.T.] or Snapp testify that *Snapp* touched *C.T.'s* genitals or other erogenous zone." But even if this is the case, Snapp's sufficiency argument would still fail for the reasons described below.

{¶ 37} Second, Snapp argues that C.T.'s testimony would support a finding of "sexual *conduct*," but is insufficient to support a finding of "sexual *contact*" as required for a conviction of sexual imposition. We agree that C.T.'s testimony about his mouth touching Snapp's penis during oral sex could have supported a finding of "sexual conduct" if Snapp had been charged with an offense containing that element. See R.C. 2907.01(A) (defining "sexual conduct" as including "fellatio . . . between persons regardless of sex").

But does this necessarily mean, as Snapp argues, that the jury could not also have found sexual contact based on the evidence presented at trial?

{¶ 38} It does not. While Snapp implies that sexual conduct and sexual contact are not merely distinct concepts but actually exclusive of one another, this implication is not supported by either the text of R.C. 2907.01 or our precedents interpreting those terms. We have previously explained that "as these terms [sexual conduct and sexual contact] are statutorily defined in R.C. 2907.01(A) and 2907.01(B), respectively, it is clear, using a purely textual analysis, that it would be impossible to engage in 'sexual conduct' without engaging in 'sexual contact.' The former is merely a more egregious form of the latter." *State v. Napier*, 1999 Ohio App. LEXIS 6328, *29 (12th Dist.). As a result, the fact that C.T.'s testimony would be sufficient to find sexual conduct does not mean it cannot be sufficient to find sexual contact; in fact the opposite is the case.

{¶ 39} The record shows that Snapp and C.T. both had sexual contact with one another. C.T. plainly testified that he performed fellatio on Snapp. If C.T.'s testimony is believed (which it must in a sufficiency analysis), then Snapp's penis touched C.T.'s mouth, which also was an erogenous zone under the circumstances. As we have previously held, while the mouth is not specifically named among the body parts listed in R.C. 2907.01, the sexual imposition statute does not provide an exhaustive list of erogenous zones. *State v. Stair*, 2002-Ohio-18 (12th Dist.); *State v. Peddicord*, 2013-Ohio-3398, ¶ 16 (3d Dist.). In similar cases, courts have concluded that the mouth, based on the facts of a given case, can be considered an erogenous zone. *State v. Ball*, 2008-Ohio-337, ¶ 26 (4th Dist.) (mouth may be considered an erogenous zone); *State v. Beachy*, 2002-Ohio-4714, ¶ 14 (5th Dist.) ("While the mouth is not specifically among the body parts listed . . . it may, under the facts of a particular case, be considered an erogenous zone"). Certainly, a mouth, when used in the act of fellatio, constitutes an

- 15 -

erogenous zone. As a result, the state presented sufficient evidence for the jury to conclude that Snapp had sexual contact with C.T., and thus the jury could find that Snapp was guilty of the first form of sexual contact described under R.C. 2907.06(A).[3]

{¶ 40} Third, in a more refined version of his second sufficiency argument, Snapp insists that there was no evidence that *he* had sexual contact with C.T.—only that *C.T.* had sexual contact with him. This argument is without merit for the same reasons just mentioned above: that is, in the circumstances of this case, Snapp touched the erogenous zone of C.T.'s mouth, in violation of R.C. 2907.06(A). Moreover, Snapp's hyper-technical argument requires ignoring that the evidence supports the conclusion that C.T. and Snapp specifically arranged, via Grindr messages, for C.T. to perform oral sex on Snapp in exchange for a car ride. Snapp was not, as he implies, a mere bystander who happened to receive oral sex from C.T. without his own involvement or knowledge. Nor is it realistic to conclude that, when C.T. started removing Snapp's pants and performing oral sex on Snapp while Snapp was driving, Snapp's acquiescence meant that Snapp did not have sexual contact with C.T.

{¶ 41} Snapp argues that if the first form of sexual imposition under the statute ("No person shall have sexual contact with another, not the spouse of the offender…") is interpreted as including a fact pattern like the one in this case, such an interpretation would render superfluous the second form of sexual imposition under the statute ("No person shall . . . cause another, not the spouse of the offender, to have sexual contact with the offender . . . ."). We disagree for three reasons. First, Snapp's interpretation of the statute relies in large part on the distinction between "have" and "engage in," but the

---

3. Snapp suggests that finding otherwise would "collapse" the definitions of "sexual conduct" and "sexual contact" into the single definition of "sexual activity," which does not appear in the sexual imposition statute. This is not the case because, as we have just explained, sexual conduct is a more egregious form of sexual contact. *State v. Napier* 1999 Ohio App. LEXIS 6328, *29.

phrase "engage in" does not actually appear in the sexual imposition statute. Second, the mere fact that the acts at issue in this case could fall under either the first or second form of sexual imposition does not mean that other cases could not present facts that would only fall under the second form of sexual imposition but not the first. Third, Snapp's interpretation would lead to an absurd result: any adult (as defined by the sexual imposition statute) who received sexual contact by a minor child would not be guilty of sexual imposition as long as the adult did not "cause" the minor child to engage in the sexual contact. Courts should not interpret statutes to yield absurd results. *State v. Robb*, 2000-Ohio-275, ¶ 43 (recognizing that courts should not interpret statutes to yield an absurd result); *see also State v. Douglas*, 2009-Ohio-6659, ¶ 55 (10th Dist.) (argument that statute did not apply because defendant involved more than one minor in sexual activity would lead to an absurd result).

{¶ 42} Based on our review of the record and our above analysis, we conclude that the state presented sufficient evidence that Snapp had sexual contact with C.T.[4]

{¶ 43} We overrule Snapp's Assignment of Error No. 2.

### C. Tier I Sex Offender Status

{¶ 44} Snapp's Assignment of Error No. 3 states:

> THE TRIAL COURT IMPOSED AN UNLAWFUL TIER I SANCTION IN THE JUDGMENT.

{¶ 45} As explained above, the trial court verbally stated at the sentencing hearing that Snapp would be required to register as a Tier I sex offender under the Adam Walsh Act, but the court failed to include this information in the written sentencing entry. In support of his Assignment of Error No. 3, Snapp argues that the court's failure means that

---

4. Snapp claims that the jury instruction deprived him of the ability to defend himself, but the record contradicts this assertion. Snapp defended himself by claiming that he and C.T. did not actually have oral sex but only "started." He also testified that his earlier admission about oral sex had been taken out of context.

- 17 -

Snapp is not subject to the Adam Walsh Act's notification requirements for Tier I sex offenders. More specifically, he argues that he has "completed his jail term and paid his fine and costs," that the Clermont County Sheriff is enforcing the Tier I sex offender requirements against him, and that "this court must find that there was no—and can be no—journalized Tier I sanction for the Sheriff to continue to enforce."

{¶ 46} Ohio's Adam Walsh Act, 2007 Am.Sub.S.B. No. 10, provides "standards for sex-offender classification and registration pursuant to the federal Adam Walsh Child Protection and Safety Act, Section 16901 et seq., Title 42, U.S. Code." *Bundy v. State*, 2015-Ohio-2138, ¶ 5. The act divides sex offenders into Tier I, Tier II, and Tier III sex or child-victim offenders. R.C. 2950.01(E) through (G). One provision of the act requires a trial court to provide notice to an offender of his tier classification "at the time of sentencing." R.C. 2950.03(A)(2). When an offender is a Tier III sexual offender, another provision provides that a sentencing court "shall include in the offender's sentence a statement that the offender is a tier III sex offender." R.C. 2929.19(B)(3)(a). This court and others have repeatedly explained this means a Tier III specification must be included in a written sentencing entry to be effective. *State v. Halsey*, 2015-Ohio-3405, ¶ 10, 14 (12th Dist.); *State v. Halsey*, 2016-Ohio-7990, ¶ 26 (12th Dist); *accord State v. Emaneul*, 2021-Ohio-448, ¶ 5 (1st Dist.); *State v. Spicer*, 2021-Ohio-386, ¶ 11 (5th Dist.). The same applies to Tier I and Tier II classifications because all registration and verification obligations under the Adam Walsh Act are punitive. *State v. Rucke*r, 2019-Ohio-4490, ¶ 14 (1st Dist.) (Tier II classification); *State v. Hildebrand*, 2018-Ohio-2962, ¶ 10 (1st Dist.) (Tier I classification).

{¶ 47} Moving beyond these basic principles, Snapp (without support in the record) states that he has "completed his jail term and paid his fine and costs" and points to case law holding that if a sentencing entry does not include the proper sexual offender

classification and the error is not corrected before the defendant completes his or her sentence, the classification cannot be retroactively imposed. *Halsey* at ¶ 32; *Spicer* at ¶ 15; *State v. Rucker*, 2019-Ohio-4490, ¶ 16 (1st Dist.). The state concedes the trial court erred in not including the Tier I sexual offender classification in the sentencing entry. However, the state argues that this error can be corrected by remanding the matter to the trial court for a nunc pro tunc entry.

{¶ 48} We need not examine Snapp's and the state's respective arguments about whether we may remand for a nunc pro tunc entry because both parties are putting the cart before the horse. The Ohio Constitution provides that our court "shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district..." Ohio Const. Art. IV, § 3(B)(2). Snapp's Assignment of Error No. 3 does not ask us to do any of these things. Snapp does not ask us to affirm the sentence; after all, appellants by definition do not seek affirmance. Snapp does not ask us to reverse his sentence; on the contrary, Snapp is satisfied with the sentence's exclusion of Tier I status. Nor does Snapp ask us to modify his sentence; again, he is satisfied with the sentence's exclusion of Tier I status.

{¶ 49} Instead, Snapp asks us to "find that there was no—and can be no— journalized Tier I sanction for the Sheriff to continue to enforce." Snapp's request is not specific, but it appears to be either (1) a request for an advisory opinion about the impact of the trial court's omission of his Tier I status from the written sentencing entry, or (2) a request for an extraordinary writ directing the sheriff's actions. We do not have jurisdiction to do either of these things in the context of this appeal. *State v. Ndubueze*, 2024-Ohio-1415, ¶ 13 (12th Dist.) ("It is well settled that courts do not issue advisory opinions"); *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 15 (12th Dist.) (explaining that a writ is a distinct

- 19 -

remedy). In other words, even if Snapp is correct about the impact of the Tier I omission and correct about the trial court's inability to issue a nunc pro tunc entry at this time, it is still the case that the Clermont County Sheriff is not a party to this case, and so we may not issue an order directing the sheriff's actions in this direct appeal.

{¶ 50} Because we cannot, as a procedural matter, grant the relief requested by Snapp's Assignment of Error No. 3, we dismiss that assignment as not ripe for review. *Mundy v. Centrome, Inc.*, 2024-Ohio-3358, ¶ 45 (12th Dist.).

**D. Jurisdiction**

{¶ 51} Snapp's Assignment of Error No. 4 states:

THE TRIAL COURT LACKED JURISDICTION OVER THE CASE.

{¶ 52} In support of his fourth assignment of error, Snapp alleges the trial court lacked jurisdiction over the case due to a claimed defect in the complaint. Specifically, Snapp argues:

Here, the complaint designated the code section and alleged that Snapp had sexual contact with C.T., a 15 year old. It failed to allege that Snapp caused [C.T.] to have sexual contact with him or that CT's allegations were corroborated—the same error repeated in the jury instructions. Thus, the complaint omitted the corroborating-evidence element, the actus reus, and the causation at issue in the case—failing to state an offense and failing to secure jurisdiction in the trial court.

(Citations omitted.)

{¶ 53} According to Crim.R. 12(C)(2), a defendant "must" raise *before trial* "[d]efenses and objections based on defects in the . . . complaint (other than failure to show jurisdiction in the court . . . which objection[] shall be noticed by the court at any time during the pendency of the proceeding)." So while a defendant is not required to raise a defense or objection based on a *jurisdictional* defect in a criminal complaint for that defense or objection to be heard on appeal, Crim.R. 12(H) provides that the failure

to raise a defense or objection based on a *non-jurisdictional* defect in a criminal complaint results in waiver. Even in non-jurisdictional defect cases, a court may reverse only for plain error. *State v. Stefanopoulos*, 2012-Ohio-4220, ¶ 20 (12th Dist.).

{¶ 54} Snapp failed to object to the complaint or file a Crim.R. 12(C) motion alleging that the complaint was defective. We need not determine whether Snapp's argument about the complaint is truly jurisdictional in nature—as he claims in his appellate brief—because there was no defect in the complaint, whether jurisdictional or non-jurisdictional, for the reasons that follow.

{¶ 55} "The purpose of a criminal complaint is to inform the accused of the identity and essential facts constituting the offense charged." *Id.* at ¶ 21. A complaint is not defective because it fails to allege a specific statutory subsection, so long as the substance of the complaint is sufficient to inform the accused of the charges against them. *State v. Doans*, 2008-Ohio-5423, ¶ 8 (12th Dist.). "While the exact statutory language does not have to be expressed, language equivalent to the crime's essential elements must be present." *State v. Florence*, 2014-Ohio-2337, ¶ 22 (12th Dist.).

{¶ 56} In this case, the complaint stated that Snapp was charged with sexual imposition in violation of R.C. 2907.06(A)(4), a third-degree misdemeanor. The complaint further contained language of the sexual imposition statute sufficient to inform him of the charges against him:

> No person shall have sexual contact w/ another [if] the other person is 13 years of age or older, but less than 16 years of age, whether or not the offender knows the age of such person.
>
> To wit: you engaged in sexual contact w/a 15 year old.

Although the complaint did not include the full text of the statute, it provided more than sufficient information to inform Snapp of the identity and essential facts constituting the

offense charged. *See State v. Walston*, 2019-Ohio-1699, ¶ 14-17 (12th Dist.). Furthermore, to the extent Snapp incorporates his earlier arguments with regard to "sexual contact" and "corroboration" into his argument in support of his Assignment of Error No. 4, we refer back to our analysis rejecting those arguments. Accordingly, we find no error and overrule Snapp's argument that the trial court lacked jurisdiction over the case.

{¶ 57} We overrule Snapp's fourth assignment of error.

### E. Cumulative Error

{¶ 58} Snapp's Assignment of Error No. 5 states:

THE CUMULATIVE ERRORS IN THE CASE DEPRIVED
SNAPP OF DUE PROCESS.

{¶ 59} In support of his fifth assignment of error, Snapp argues his conviction must be reversed under the "cumulative error" doctrine. Pursuant to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. McClurkin*, 2010-Ohio-1938, ¶ 105 (12th Dist.).

{¶ 60} After thoroughly reviewing the record, we have found no merit to any of Snapp's assignments of error. Therefore, Snapp cannot demonstrate cumulative error. *State v. Kaufhold*, 2020-Ohio-3835, ¶ 63 (12th Dist.). Accordingly, finding the cumulative error doctrine inapplicable to the case at bar, Snapp's fifth assignment of error lacks merit and is overruled.

{¶ 61} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Municipal Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


/s/ Matthew R. Byrne, Presiding Judge


/s/ Robert A. Hendrickson, Judge


/s/ Robin N. Piper, Judge