[Cite as *State v. Umeh*, 2026-Ohio-1836.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250328 |
| | | TRIAL NO. 23/CRB/14743 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| EMMANUEL UMEH, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and the arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/20/2026 per order of the court.**

**By:**_____
    **Administrative Judge**

[Cite as *State v. Umeh*, 2026-Ohio-1836.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250328 |
| | | TRIAL NO. 23/CRB/14743 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| EMMANUEL UMEH, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 20, 2026


*Emily Smart Woerner*, City Solicitor, *Susan Zurface,* Chief Prosecuting Attorney, and *Amber Daniel Jeffrey,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Repper-Pagan Law, Ltd.*, and *Christopher Pagan*, for Defendant-Appellant.

Zᴀʏᴀs, **Judge.**

**{¶1}** Emmanuel Umeh appeals his conviction, following a bench trial, for sexual imposition. In two assignments of error, Umeh argues that the State failed to allege the essential element of corroboration in its complaint, the parties failed to litigate corroboration at trial, the trial court held at the Crim.R. 29 hearing and when pronouncing its verdict that corroboration was not an element, and cumulative errors deprived him of his rights to effective assistance of counsel and due process. For the following reasons, we affirm the judgment of the trial court.

## Factual Background

**{¶2}** Emmanual Umeh was charged with sexual imposition for having sexual contact with L.K., knowing the sexual contact is offensive to the other person. Umeh pled not guilty and proceeded to a bench trial.

**{¶3}** L.K. was a family nurse practitioner at St. Vincent DePaul Charitable Pharmacy. She provided free primary-care health to patients at St. Vincent. On July 13, 2023, L.K. had an appointment with Umeh at 9:00 a.m. L.K. had been treating Umeh for two years. That morning, L.K. met with Umeh in a patient-examination room.

**{¶4}** Toward the end of the exam, Umeh stated that he had only had sex three times in the past two years, and that doctors say that men should have sex three times a week. Umeh told L.K. that he would like to spend more time with her and asked for her phone number. L.K. informed him that her patients could only have her office number because their relationship was patient and provider. Umeh explained that no women give him an erection, but every time he sees her, he has an erection and asked her to touch his erection. While he was speaking, L.K. saw the erection because Umeh was sitting across from her with his legs open and wore tight-fitting clothing.

3

**{¶5}** L.K. immediately ended the appointment and told him his behavior was inappropriate. She tried to usher him out of the room and opened the door slightly, when he aggressively responded, "Sit back down, we are not done talking." Umeh accused her of being mad at him, stared at her, and said he would leave if she gave him a hug. L.K. was scared and wanted him to leave, so she gave him a hug while extending her arms and keeping her body away from him. Umeh slid his hands down her back, grabbed her buttocks with both hands, very hard, and pulled her into his crotch. Umeh began moaning and thrusting himself into her for approximately five seconds.

**{¶6}** L.K. pushed him away and told him that they were friends and nothing more. She exited from the exam room, and Umeh followed her. After walking down the stairs, Umeh went into the lobby, and L.K. went into her manager's office to report the incident. L.K. also reported it to her director. L.K. testified that she was scared during the encounter.

**{¶7}** The following day, Umeh sent a text to the office. The office has a phone line and a text line for patients to communicate. The text said,

> Dr. [L], I apologize that you felt offended by my verbal talk. Sin is human and forgiveness is divine. I now know that compliment is an act of provocation to some people here. Meanwhile, with this disgrace, which face will the staff imagine me. For that reason, I can't come to the pharmacy anymore. God bless you abundantly. God bless you abundantly.

**{¶8}** Eleven days later, L.K. reported the incident to the police. L.K. needed time to process what had happened and decide if she wanted to press charges. She took some time off of work and spoke about the incident with several friends and family members. L.K. decided to report it to prevent it from happening to someone

else in the future.

{¶9} L.B., the pharmacy operations manager, testified that L.K. had entered the director's office that day, extremely upset, after her appointment with Umeh. L.K. was crying as she explained what had happened. After hearing the allegations, L.B. tried to find Umeh in the lobby to inform him of their decision that he would leave the program. When L.B. could not locate Umeh, she tried to call him. She was able to contact him, and after that conversation, Umeh texted the office. The next day, she spoke with L.K., who was still extremely upset.

{¶10} L.K.'s husband, W.K., testified that L.K. called him crying that day and was extremely distraught. The two commute together for work, so he picked her up early from work after lunch. L.K. cried during the car ride and did not say much. When they arrived home, L.K. went straight to bed crying. W.K. had spoken with her about the incident multiple times, and she remained upset and frustrated.

{¶11} Umeh testified that L.K. had been his doctor for two years. On July 13, 2023, Umeh had an appointment with L.K., and at the end of the appointment, she hugged him, and he hugged her back. He denied touching her buttocks and telling her that she sexually aroused him. Umeh complained to L.K. that his leg hurt, and she misunderstood him. During the hug, Umeh testified that he did not touch L.K or any of her body parts in a sexual way. When he left the office, he was unaware of any issues with L.K. because she did not act like there was a problem. She was laughing when they walked down the hallway.

{¶12} When asked why he sent the text, Umeh explained that he thought he may have offended her when he asked her if she wanted him to die because she was supposed to call him from time to time to check on his health. He further explained that despite the medication she prescribed, he was not feeling well, and she did not

show her concern by calling him, and he thought she wanted him to die. When he told her that during the appointment, she got angry.

{¶13} The trial court found Umeh guilty after concluding that the State presented corroborating evidence because the victim immediately reported the unwanted sexual contact to a co-worker. Umeh also offered corroborating evidence in the form of the text message and apology.

{¶14} Umeh appealed, and in two related assignments of error, he contends corroboration is an essential element of sexual imposition, which was not included in the complaint, rendering the court without jurisdiction and resulting in cumulative errors, including ineffective assistance of counsel and a lack of due process.

## Corroboration

{¶15} In his first assignment of error, Umeh contends that the State failed to allege the essential element of corroboration in its complaint, rendering the complaint insufficient to confer jurisdiction on the court. He further argues that his trial counsel was ineffective for failing to object to the flawed complaint, and the complaint failed to state an offense in violation of due process.

{¶16} To establish a conviction for sexual imposition, the State must prove that the defendant had sexual contact with another when the offender knows the sexual contact is offensive to the other person. *See* R.C. 2907.06(A). R.C. 2907.06(B) states, "No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence." In interpreting the corroboration requirement, the Ohio Supreme Court has held that

> [t]he corroborating evidence necessary to satisfy R.C. 2907.06(B) need
> not be independently sufficient to convict the accused, and it need not
> go to every essential element of the crime charged. Slight circumstances

or evidence which tends to support the victim's testimony is satisfactory. The corroboration requirement of R.C. 2907.06(B) is a threshold inquiry of legal sufficiency to be determined by the trial judge, not a question of proof, which is the province of the factfinder.

*State v. Economo*, 76 Ohio St.3d 56, 60 (1996).

**{¶17}** Umeh acknowledges that *Economo* held that corroboration was a threshold inquiry for the trial court but argues that the Ohio Supreme Court reversed *Economo* in *State v. Bevly*, 2015-Ohio-475, ¶ 10, on the authority of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Umeh further contends that after *Bevly*, corroboration is now an element of sexual imposition.

**{¶18}** The *Bevly* Court addressed the constitutionality of R.C. 2907.05(C)(2), which required a mandatory prison term for gross sexual imposition ("GSI") when the State provided corroborating evidence. *See Bevly* at ¶ 1. Bevly, who pled guilty to two counts of GSI, argued, in part, that the statute violated his right to a jury trial because a trial court's finding of corroborating evidence enhanced the punishment. *Id.* at ¶ 3, 25. Applying *Alleyne v. United States*, 570 U.S. 99 (2013), the Court concluded "that the corroboration requirement in R.C. 2907.05(C)(2)(a) is an element that would have been required to be found by a jury and that application of the statute in Bevly's case violated the Sixth Amendment right to a jury trial." *Id.* at ¶ 25. The Court held "that a finding of the existence of corroborating evidence pursuant to R.C. 2907.05(C)(2)(a) increases the penalty to which a defendant convicted of gross sexual imposition is subjected and thus is an element that must be found by a jury beyond a reasonable doubt." *Id.* at ¶ 27.

**{¶19}** In reaching its decision, the Court noted that the sexual-imposition statute "requires the existence of corroborating evidence before a defendant can be

7

convicted of the crime of sexual imposition." *Id.* at ¶ 9. The Court distinguished the corroborating-evidence requirement in the sexual-imposition statute because "that requirement is fundamentally different from the one before us today because it constitutes an element of the offense." *Id.* at ¶ 10. The court pointed out the corroboration requirement in the gross-sexual-imposition statute is "unique in that it enhances the sentence imposed on the offender based on the quantity of evidence presented to prove guilt." *Id.*

{¶20} Since *Bevly*, several courts have held that corroboration is not an element of sexual imposition. *See State v. Snapp*, 2025-Ohio-5276, ¶ 23 (12th Dist.) (holding that "the corroboration requirement remains a matter for determination by the trial court judge, not a jury" because *Bevly* did not overrule, clarify, or otherwise alter the decision in *Economo*); *State v. Betts*, 2020-Ohio-4800, ¶ 17 (9th Dist.) (Because *Bevly* did not alter the standard that the Supreme Court set forth in *Economo*, we reject any contention that *Bevly* elevated the State's burden of proof in sexual-imposition cases.).

{¶21} Thus, the corroboration requirement remains a matter for determination by the trial court judge, not a jury. Because corroboration is not an element of sexual imposition, the complaint did not lack an essential element, Umeh's counsel was not ineffective for failing to challenge the complaint, and the complaint stated the offense of sexual imposition.

{¶22} Accordingly, we overrule the first assignment of error.

### Cumulative Legal Errors

{¶23} In his second assignment of error, Umeh contends that there were cumulative errors at trial that deprived Umeh of his right to effective assistance of

counsel and due process under the United States and Ohio Constitutions. Umeh contends that he suffered "a litany of legal errors" because the complaint failed to provide fair notice due to the missing element of corroboration, trial counsel mistakenly removed corroboration as an element, and the trial court concluded that corroboration was not an element of sexual imposition.

**{¶24}** Umah's second assignment of error is premised on his argument that corroboration is an element of sexual imposition. As discussed above, corroboration is not an element of sexual imposition. Consequently, Umeh has failed to demonstrate that cumulative errors deprived him of his rights to effective assistance of counsel and due process.

**{¶25}** Consequently, we overrule Umeh's second assignment of error.

## Conclusion

**{¶26}** Having overruled Umeh's two assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**KINSLEY**, **P.J.,** and **BOCK, J.,** concur.